```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**TAMMY WEIGEL** *et al.*                                    **CIVIL ACTION**

**VERSUS**                                                    **No. 05-6607**

**UNION PACIFIC RAILROAD COMPANY** *et al.*                  **SECTION: I/1**

### ORDER AND REASONS

Before the Court are two related motions: (1) a motion to remand this action to state court based on incomplete diversity filed on behalf of plaintiffs, Tammy Weigel, individually and on behalf of her minor children, Kristin McKormick and Mari Weigel; Jerald Aucoin; and Keith Porter, individually and on behalf of his minor child, Keith Poldery, and all others similarly situated (collectively "plaintiffs"),[1] and (2) a motion for summary judgment filed on behalf of defendant, the Public Belt Railroad Commission for the City of New Orleans (incorrectly referred to as "New Orleans Public Belt Railway," and hereinafter "Public Belt").[2] For the following reasons, plaintiffs' motion to remand

---

[1] Rec. Doc. No. 10.

[2] Rec. Doc. No. 19.

is **DENIED**, and the motion for summary judgment of defendant, the Public Belt, is **GRANTED**.

### *Background*

This putative class action arises out of a February 28, 2005, release of the chemical carbon black from the bottom cargo compartment of rail car no. ACFX46153, leased and shipped by defendants, Sid Richardson Carbon, Ltd. and Sid Richardson Carbon & Energy Co. (collectively, "Sid Richardson"), and operated and transported by defendant, Union Pacific Railroad Company ("Union Pacific"), as it was crossing the Huey P. Long bridge in Jefferson Parish, Louisiana.[3] Plaintiffs allege they were traversing the bridge by automobile or in the vicinity of the Huey P. Long bridge when they were exposed to the chemical substance as it was released from the rail car.

On February 27, 2005, rail car no. ACFX46153 on train no. QLINSB-26 traveled from Union Pacific's Livonia yard to its Avondale yard and the following day, after leaving Avondale, it pulled to a stop on the Huey P. Long Bridge.[4] Sometime on February 28, 2005, while train no. QLINSB-26 sat idle on the bridge, carbon black leaked from rail car no. ACFX46153 to the

---

[3] Rec. Doc. No. 1.

[4] Rec. Doc. No. 19, statement of uncontested material facts. The train originated in the Richardson yard in Addis, Louisiana, on February 23, 2005.

area below.[5]

On November 3, 2005, plaintiffs filed this action in Civil District Court, Orleans Parish, Louisiana, alleging only state law negligence claims against diverse defendants, Union Pacific, Sid Richardson and conductor Frank Rivera, and against non-diverse defendants, the Public Belt, engineer C.J. Jefferson and fireman in training C.A. Carr, related to the February 28, 2005, carbon black chemical spill on the Huey P. Long Bridge.[6]  The bridge is owned and operated by the City of New Orleans, by and through defendant, the Public Belt, pursuant to La. Rev. Stat. Ann. § 33:4533(A)(1).[7]  On December 14, 2005, only defendants, Union Pacific and Sid Richardson, removed plaintiffs' action to this Court.[8]

In their motion for remand, plaintiffs contend that diversity jurisdiction does not exist and that this matter should be remanded to Civil District Court.  Defendants, Union Pacific and Sid Richardson, counter that the non-diverse defendants were improperly joined in order to prevent removal.  Defendant, the

---

[5] Rec. Doc. No. 19, statement of uncontested material facts.

[6] Rec. Doc. No. 1.

[7] Rec. Doc. No. 19, statement of uncontested material facts, p. 2.

[8] Rec. Doc. No. 1.  The conductor, Frank Rivera, who plaintiffs agree is a diverse defendant, did not join in the removal of this action.  While his presence does not destroy complete diversity, Union Pacific and Sid Richardson alleged in their notice of removal that he too was improperly joined but have made no arguments with respect to him in any of the papers filed with the Court.  Accordingly, the Court does not address plaintiffs' claims against Rivera in this Order and Reasons.

Public Belt, urges the Court to pierce plaintiffs' pleadings and render summary judgment against plaintiffs and in its favor as there is no genuine issue concerning whether the Public Belt transported the rail car in question, or had custody, care or control of the rail car during its trip.

### *Law and Analysis*

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).[9]  In *Smallwood v. Illinois Central Railroad*, the United States Court of Appeals for the Fifth Circuit restated the law with respect to the second method of establishing improper joinder:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.
>
> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law.  A court may resolve the issue in one of two ways.  The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the

---

[9] The majority opinion in *Smallwood* adopted the term "improper joinder" in lieu of the term "fraudulent joinder." *Smallwood*, 385 F.3d at 571 n.1.

> allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)) (footnotes omitted).

The "burden of persuasion placed upon those who cry 'fraudulent [or improper] joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). In determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (quoting *B., Inc.*, 663 F.2d at 549). The court must also resolve all ambiguities in the controlling state law in plaintiff's favor. *Id.*

**A. The Public Belt's Motion for Summary Judgment**

As mentioned above, in order to resolve plaintiffs' basis for recovery under state law, the court may pierce the pleadings and conduct a summary inquiry. *See Smallwood*, 385 F.3d at 573. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's

recovery against the in-state defendant." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 310 (5th Cir. 2005) (quoting *Smallwood*, 385 F.3d at 576-74). "When determining [improper] joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law." *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

The Public Belt argues that plaintiffs have no possibility of recovery against it because it never had a duty to inspect rail car no. ACFX46153. The Public Belt submits materials which establish that it never had custody, care or control of the rail car that released the carbon black during the car's transport from the Richardson Facility to the site on the Huey P. Long where the carbon black was released.

Plaintiffs broadly allege that the Public Belt, as the owner of the Huey P. Long Bridge, had a duty (1) to ensure the safe transport of hazardous chemicals, (2) to ensure that railroad cars are equipped with non-defective valves and fittings, and (3) to ensure that agents, employees or workers of railroads using the Public Belt lines exercise due care in handling and/or transporting of hazardous chemicals. Plaintiffs cite no authority for such duties.[10]

---

[10] In fact, plaintiffs did not file an opposition to the Public Belt's summary judgment motion.

With respect to plaintiffs' claims that the Public Belt failed to inspect or otherwise ensure safe transport, the Court does not need to pierce the pleadings and consider any summary judgment evidence. In an earlier-filed action arising from the same incident, *Forrest v. Union Pacific Railroad Co.*, Civil Action No. 05-1659, now pending in this Court, Magistrate Judge Shushan denied the plaintiffs' motion to add the Public Belt and other non-diverse employees of Union Pacific as defendants. The court held that:

> The plaintiffs' contention would require the owner of the bridge to station inspectors at each end of the bridge to inspect trains before they went onto the bridge. The plaintiffs do not cite any authority for such a duty. The plaintiffs' argument would require the owner of every public right of way, for example a state bridge or highway, to inspect each user before it enters onto the right of way. There is no merit to this contention.

*Forrest v. Union Pac. R.R. Co.*, Dec. 23, 2005, Order (Rec. Doc. No. 36, p. 6). This Court agrees with the reasoning of Judge Shushan in *Forrest v. Union Pacific Railroad Co.*

Without any authority to support the contention that owners of public right of ways have a duty to inspect all users, this Court holds that the Public Belt does not have a duty to inspect every rail car that crosses the Huey P. Long Bridge or to monitor agents, employees or workers of railroads using Public Belt lines. Simply stated, plaintiffs confuse the duty of the bridge owner with the duties of a shipper or carrier.

Plaintiffs also allege that the Public Belt transported the

7

rail car at issue to Union Pacific and, therefore, the Public Belt had a duty to inspect the car and ensure its safe transport. The Public Belt argues that plaintiffs' allegations that it had custody, care or control of the pertinent rail car at any point during its transport is without merit.

In support of its contention, the Public Belt has produced evidence that it never had custody or control over rail car no. ACFX46153. Thomas Lobello Jr., the chief operating officer of the Public Belt, who is in charge of maintaining operational records, avers in a sworn affidavit, and records corroborate,[11] that rail car no. ACFX46153 was not transported by or delivered to the Public Belt, nor was rail car no. ACFX46153 in the custody, care or control of the Public Belt, at any time relevant to this incident.[12] The Public Belt also has submitted evidence showing that rail car no. ACFX46153 was solely in Union Pacific's custody from the time Union Pacific received the car at the Richardson facility in Addis, Louisiana, and that Union Pacific transported the rail car from Addis to Livonia, Louisiana, then on to Avondale, where, after reaching the Huey P. Long bridge, it returned with "leaking contents."[13]

Plaintiffs do not offer any evidence to rebut the Public

---

[11] Rec. Doc. No. 19, exhibit 2.

[12] Rec. Doc. 19, exhibit 1, ¶¶ 4-5.

[13] Rec. Doc. 19, exhibit 2.

Belt's evidence.  Since the Public Belt never had custody, care or control of the rail car at issue, it did not have any duties to inspect the car or ensure its safe passage along the Huey P. Long bridge.  Based on the record and the uncontested evidence, plaintiffs have no possibility of recovery against the non-diverse Public Belt.  Accordingly, the Public Belt is entitled to judgment as a matter of law.

**B. Engineer C.J. Jefferson and Fireman in Training C.A. Carr**

Plaintiffs contend that two employees of Union Pacific, in-state defendants Jefferson and Carr, were properly joined in this case.  Plaintiffs claim these defendants were negligent in the manner in which they performed their job duties.  Specifically, plaintiffs contend that Jefferson and Carr were negligent in their transportation of hazardous materials, that they failed to exercise proper care in the transport, that they failed to maintain a proper lookout, and that they failed to prevent a collision and/or impact with a railcar causing rupture and/or a hole.[14]

In order to impose liability for negligence, Louisiana courts undertake a duty-risk analysis pursuant to which a plaintiff must prove:  (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his conduct to the appropriate

---

[14] Rec. Doc. No. 1.

standard of care; (3) defendant's substandard conduct was cause-in-fact of the plaintiff's injuries; (4) defendant's substandard conduct was legal cause of plaintiff's injuries; and (5) actual damages.  *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship*, 342 F.3d 416, 419 (5th Cir. 2003) (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So. 2d 270, 275-76 (La. 2002)).  The threshold requirement for a negligence claim is that the defendant must owe a duty to the plaintiff.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 286 (5th Cir. 1992).

Defendants Jefferson and Carr were the train engineer and fireman in training,[15] respectively, on train no. QLINSB-26 from Livonia to Avondale.[16]  Engineer Jefferson's primary job duty was to operate the engine, not the cars, of the train while in transit.[17]

Even assuming a train engineer or a fireman in training have a duty to maintain the cars of a train, neither Jefferson nor Carr were part of the train's crew at the time of the carbon black spill or at any time after train no. QLINSB-26 left Avondale.  Plaintiffs have not put forth any facts to support

---

[15] According to the affidavit of Carr, a fireman in training trains to be an engineer.  Rec Doc. No. 21, exhibit E.

[16] Rec. Doc. No. 21, exhibit D, affidavit of Jefferson, & exhibit E, affidavit of Carr.

[17] Rec. Doc. No. 21, exhibit D, affidavit of Jefferson.  See also 49 C.F.R. §§ 215.11, 215.13.

their contention that either Jefferson or Carr had any responsibilities or duties involving the rail cars or that these non-diverse crew members played any role in the valve failure that caused the carbon black leak.

Finally, even if these non-diverse defendants were working on the train at the time of the incident, rail car no. ACFX46153 was the 75th car in the train and was approximately 3750 feet behind the engine.[18]  Train no. QLINSB-26 already had been built and inspected by the car department in Livonia before the defendants, Jefferson and Carr, boarded it for Avondale.[19] Moreover, the bill of lading reveals that the loaded car at issue had been weighed at the Livonia yard,[20] and both Jefferson and Carr swear that there were no unusual train handling events between Livonia and Avondale.[21]

Based on the foregoing, there is no support for plaintiffs' claim that it is the duty of the train engineer or his trainee to inspect all of a train's cars prior to departure.  It would likewise be impractical to require the engineer and/or his fireman in training, while on board, to be responsible for the integrity of every rail car on the train over the course of a

---

[18] Rec. Doc. No. 21, exhibit C, p.2.

[19] See Rec. Doc. No. 21, exhibit E, affidavit of Carr.

[20] Rec. Doc. No. 21, exhibit A, UPRR 000012-000014.

[21] Rec. Doc. No. 21, exhibits D & E.

trip and it would be especially impractical to hold crew members accountable for events that occur after they have disembarked. Therefore, plaintiffs have failed to plead any facts supportive of any reasonable basis for recovery against either Jefferson or Carr and, therefore, the Court finds that they too were improperly joined.  Accordingly,

**IT IS ORDERED** that the motion of defendant, New Orleans Public Belt Railway, for summary judgement is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for remand of plaintiffs, Tammy Weigel, individually and on behalf of her minor children, Kristin McKormick and Mari Weigel, Jerald Aucoin, and Keith Porter, individually and on behalf of his minor child, Keith Poldery, and all others similarly situated, is **DENIED.**

New Orleans, Louisiana, April __3rd__, 2006.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**